**LONDA MANUFACTURING COMPANY, Plaintiff,**

v.

**SATURN RINGS, INC., d/b/a P. M. Refining Division, Defendant.**

**Civ. No. 80–508–T.**

United States District Court, W. D. Oklahoma.

Sept. 24, 1980.

John G. Johnson, Del City, Okl., for plaintiff.

John R. McCandless of Kerr, Davis, Irvine, Krasnow, Rhodes & Semtner, Oklahoma City, Okl., Leslie G. Foschio of Cohen,

Swados, Wright, Hainfin, Bradford & Brett, Buffalo, N. Y., for defendant.

## MEMORANDUM OPINION AND ORDER

RALPH G. THOMPSON, District Judge.

Plaintiff brings this suit for damages from defendant's alleged conversion of 50 troy ounces of gold. Jurisdiction is based upon diversity; plaintiff is an Oklahoma corporation with its principal place of business in Oklahoma, defendant is a New York corporation with its principal place of business in New York. Defendant has moved to dismiss for lack of personal jurisdiction, Rule 12(b)(2), Federal Rules of Civil Procedure, or in the alternative to transfer venue, 28 U.S.C. § 1404(a), and the issues have been fully briefed by all parties.

A Federal District Court must look to the law of the state where it sits to determine whether it has in personam jurisdiction over a defendant. *Doyn Aircraft, Inc. v. Wylie*, 443 F.2d 579 (10th Cir. 1971); *Jem Engineering & Manufacturing, Inc. v. Toomer Electrical Co.*, 413 F.Supp. 481 (N.D.Okl.1976). If in personam jurisdiction over the nonresident defendant exists in this Court, it must be found in the authority of the pertinent Oklahoma statutes. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Burchett v. Bardahl Oil Co.*, 470 F.2d 793 (10th Cir. 1972); *Timberlake v. Summers*, 413 F.Supp. 708 (W.D.Okl.1976). For purposes of a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, the burden of proof rests upon the party asserting the existence of jurisdiction. *Wilshire Oil Co. of Texas v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); *Radiation Researchers, Inc. v. Fischer Industries, Inc.*, 70 F.R.D. 561 (W.D.Okl.1976).

Oklahoma's long arm statutes were intended to expand the proper exercise of in personam jurisdiction by Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the United States Constitution. *George v. Strick Corporation*, 496 F.2d 10 (10th Cir. 1974); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl.1976). While the degree of contact required by due process is minimal, it is essential that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The facts out of which this controversy arises and from which the contacts with Oklahoma must be found are found in the complaint and affidavits of the parties in connection with this motion. The affidavit of Phillip R. Lenard, President and a principal owner of Saturn Rings, Inc., states that Saturn Rings, Inc., is in the business of manufacturing finished gold rings and unfinished gold ring castings. P. M. Refining is a division of Saturn Rings, Inc., which processes gold and silver jewelry manufacturing waste materials to recover their respective gold and silver content. The waste materials are sent to P. M. Refining by various customers within and without the state of New York. Lenard states that a customer, on its own initiative, ships a package containing the materials to be refined to P. M.'s offices in Buffalo, New York. The package and its contents are weighed, analyzed, and recorded, and confirmation is sent to the customer. Lenard states that unless the customer requests otherwise, P. M. acquires the ownership of the metals retrieved, and the customer is paid, following processing, the value of the precious metals according to current market prices. There is no dispute between the parties as to defendant's description of its business procedure, as summarized above. Plaintiff alleges that defendant converted 50 ounces of 24K gold shipped by plaintiff to defendant on January 2, 1980.

Defendant is not qualified to do business in Oklahoma, has never registered to do business in Oklahoma, has no service agent in this state, has no office, telephone listing, or agents in Oklahoma. No officer, director, shareholder, or employee resides in Oklahoma, and no direct advertisement or solicitation is done in Oklahoma.

Plaintiff advertises in two national jewelry magazines, although the plaintiff does not allege these ads were seen prior to May, 1980. Defendant initiated at least two telephone calls and the mailing of a sample to plaintiff in June, 1978. The affidavits of the parties differ as to the latter activities. Plaintiff's affidavit alleges the calls and mailing included reference to and promotion of the refining business; defendant's affidavits allege the initial call was made to a different jeweler, who referred defendant to plaintiff as a possible contact. Defendant further alleges that the contacts were solely in promotion of the sale of gold alloy, except that a price list was mailed which included quotations of refining services.

Defendant has had additional contact with this state, as set out in Lenard's affidavit ¶ 9, which relate solely to the sale of rings and ring castings and are not in any way connected with the refining business. These activities include the retainer of an independent manufacturer's representative in Chicago, Illinois, who promotes sales and who may, occasionally visit Oklahoma. Defendant's first sale of rings and/or ring castings in Oklahoma was a $10,000 sale to a Tulsa jeweler in 1979. In 1978, an Oklahoma City jeweler purchased $100 of solder, by mail order, and the same jeweler purchased $300 of gold rings in 1980.

Defendant has performed refining business from customers in Oklahoma as follows: In 1978, orders from two customers produced $1,184.06 from 5.49 oz. of gold and $31.00 refining charges. In 1979, orders from eight customers produced $4,100.28 from 12.72 oz. of gold and $171.00 refining charges. In 1980, as of June 1, orders from five customers produced $23,997.28 from 49.89 oz. of gold and $727.20 refining charges. The portion of both total corporate revenues and P. M. refining revenues attributable to Oklahoma refining orders is a small fraction of one percent.

■ Plaintiff asserts that the Oklahoma statutes providing authority for the exercise of personal jurisdiction over this defendant are 12 Okl.Stat.1971 § 1701.03 et seq., 12 Okl.Stat.Supp.1979, § 187, and 18 Okl.Stat.1971, § 1.204a. Section 1.204a of Title 18 has been repealed effective April 10, 1980. 1980 Okl.Sess.Law Serv. (West) Chapter 68. Thus § 1.204a cannot serve as a basis for the exercise of jurisdiction over this defendant. 12 Okl.Stat. § 1701.03(a)(4) provides that jurisdiction may be exercised over a nonresident defendant if that defendant causes tortious injury in Oklahoma by an act or omission outside the state provided that the defendant regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. This statute is not applicable, as defendant caused no tortious injury *in Oklahoma.* The tortious injury occurs where the wrongful act takes place. Cf. *Acme Equipment v. Metro Auto Auction,* 484 F.Supp. 219 (W.D.Okl.1979). It appears to be uniform that a conversion takes place where the property was wrongfully appropriated. See generally 18 Am.Jur.2d *Conversion,* § 1. Although the Oklahoma courts have not had occasion to pass on this specific question, the Oklahoma Supreme Court has held that an allegation of the *place* of the conversion is a necessary element of the pleading. *May v. City National Bank & Trust Co.,* 258 P.2d 945 (Okl.1953). (Citing 53 Am.Jur. 936–941) The economic harm suffered by plaintiff in this forum will not support jurisdiction under 12 O.S. § 1704.-03(a)(4), as plaintiff argues, because it is the tortious injury, not any economic harm flowing from it, which is required by the statute to be caused in this state. The place where economic harm is suffered is not determinative. See *Stark Carpet Corp. v. M–Geough Robinson, Inc.,* 481 F.Supp. 499 (S.D.N.Y.1980); *Security National Bank v. Ubex Corporation, Ltd.,* 404 F.Supp. 471 (S.D.N.Y.1975); *Friedr. Zoellner New York Corp. v. Tex Metals Company,* 278 F.Supp. 52 (S.D.N.Y.1967), aff'd, 396 F.2d 300 (2nd Cir. 1968). (These cases, of course, are decided under the New York statute, rather than Oklahoma's. However, the New York provision is very similar, and provides an even broader jurisdictional reach than Oklahoma's.) Moreover, as explained below, the

**56**

second requirement of the section, i. e., regular, persistent, or profitable contact with this state, has not been shown.

 12 Okl.Stat. § 1701.03(a)(1) and § 187 provide jurisdiction over a defendant who is "transacting business" within the state, but only when the cause of action arises from the acts which give jurisdiction. The nonresident corporation's activities within this state must be substantial, continuous and regular, as opposed to casual, single or isolated, to constitute the transaction of business in this state. *CMI Corp. v. Costello Construction Corp.*, 454 F.Supp. 497 (W.D. Okl.1977), aff'd by unpublished opinion, No. 77–2075 (10th Cir. August 2, 1978).

 Defendant's activities within this forum are, even accepting plaintiff's version of the June, 1978, mail and phone solicitation as true, too remote and isolated to constitute transacting business under the long arm statutes, 12 O.S. §§ 187, 1701.-03(a)(1) and, in any event, are not the acts from which the cause of action arose, as is required under these sections. *George v. Strick Corp.*, 496 F.2d 10 (10th Cir. 1974), *Roberts v. Jack Richards Aircraft Co.*, 536 P.2d 353 (Okl.1975). Even if defendant were to be classified as an "active purchaser," See *CMI Corp. v. Costello Construction Corp.*, supra; *Yankee Metal Products Co. v. District Court of Oklahoma County*, 528 P.2d 311 (Okl.1974), the defendant's activities within this state and its course of dealing with Oklahoma citizens are insufficient, both under the Oklahoma jurisdictional statutes and the United States Constitution, to support the exercise of this Court's jurisdiction over it.

In accordance with the foregoing, the Court concludes that there exists no authority in the pertinent Oklahoma statutes upon which jurisdiction over this defendant may be based. Defendant's Motion to Dismiss is therefore granted and it is hereby ORDERED that this action be and hereby is dismissed. Rule 12(b)(2), Federal Rules of Civil Procedure.

IT IS SO ORDERED.